UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE A. SISNEROS, | No. 2:20-cv-1470 DB |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's motion to remand.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, plaintiff's testimony, lay witness testimony, and step five finding were erroneous.

////

////

---

[1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social Security and has, therefore, been substituted as the defendant. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF No. 11.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

**PROCEDURAL BACKGROUND**

On August 29, 2017, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on May 30, 2017. (Transcript ("Tr.") at 17.) Plaintiff's alleged impairments included major depressive disorder, anxiety disorder, ADHD, cognitive disorder, menopause, and chronic fatigue. (Id. at 280.) Plaintiff's applications were denied initially, (id. at 144-47), and upon reconsideration. (Id. at 155-60.)

Plaintiff requested an administrative hearing which was held before an Administrative Law Judge ("ALJ") on November 8, 2019. (Id. at 36-76.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 36-39.) In a decision issued on December 24, 2019, the ALJ found that plaintiff was not disabled. (Id. at 30.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since May 30, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder, and cognitive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform routine tasks equivalent to unskilled work with a maximum specific vocational preparation (SVP) of 2, she can have no regular interaction with the general

public for her primary duties, and finally, she requires indoor work with ready access to a bathroom.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 19-30.)

On July 8, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's December 24, 2019 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 21, 2020. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following four principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ improperly rejected plaintiff's testimony; (3) the ALJ improperly rejected lay witness testimony; and (4) the ALJ erred at step five of the sequential evaluation. (Pl.'s MSJ (ECF No. 16-1) at 11-21.[3])

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

I.      **Medical Opinion Evidence**

Defendant concedes that plaintiff is entitled to summary judgment on this claim as the ALJ's treatment of multiple medical opinions was erroneous. In this regard, defendant acknowledges that in evaluating the opinion of Mr. Meaghan Connors, the "ALJ's consistency finding is not well articulated." (Def.'s Mot. (ECF No. 18) at 5; see 20 C.F.R. § 404.1520c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Defendant also asserts that with respect to the opinion of Dr. Robert Bilbrey "the ALJ did not articulate objective evidence in the record inconsistent with Dr. Bilbrey's opinion." (Id. at 6.) And that in evaluating the opinion of Dr. Samia Estrada "the ALJ did not explain why" the opined impairments "were not included in the RFC findings after finding the opinion persuasive because it was supported by and consistent with the record." (Id.)

Accordingly, plaintiff is entitled to summary judgment on this claim.

II.     **Plaintiff's Subjective Testimony**

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 16-1) at 16-19.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security

cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[4] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ recounted plaintiff's testimony as follows:

> The claimant alleges an inability to engage in substantial gainful activity-level work due to mental health problems which cause problems with memory, completing tasks, with concentration, understanding, following instructions, and getting along with others. The claimant reported spending time with others, largely in group therapy sessions. The claimant stated her hobbies and interest include watching television and walking. She stated she is able to go shopping in stores and can pay bills, count change, handle a savings account and use a checkbook and money order. The claimant stated she can drive a car for transportation and is able to complete some household chores, including cleaning, mopping, doing dishes and

////

---

[4] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

> pulling weeds. She reported some problems in completing personal care. The claimant is prescribed, among other medication, Bupropion.[5]

(Tr. at 23.)

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision."[6] (Id..)

The ALJ then proceeded to essentially repeat this finding, stating that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms," were "not entirely consistent with the objective record, nor are they entirely supported by the objective record." (Id.) In a similar manner, the ALJ concluded that plaintiff's "allegations of functional limitations due to mental impairments," were "generally inconsistent with" the medical evidence of record. (Id.) The ALJ went on to repeatedly rely on findings that plaintiff's allegations were "generally not consistent with the record," "generally disproportionate to the record," and being "not entirely corroborated by the objective examination findings and observations." (Id. at 23-24.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart,

---

[5] "Bupropion is an antidepressant." Patino v. Berryhill, Case No. CV 16-2970 DFM, 2017 WL 3184468, at *3 (C.D. Cal. July 26, 2017).

[6] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC. By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." Trevizo, 871 F.3d at 679 n.6.

400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Perez v. Astrue, 247 Fed. Appx. 931, 936 (9th Cir. 2007) ("That the degree of Perez's subjective complaints were not corroborated by the objective clinical findings in the ALJ's view was of no legal moment because pain is inherently an individual phenomenon."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Moreover,

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).[7]

The ALJ also attempted to support the rejection of plaintiff's testimony by asserting that the record contained "a general lack of evidence that would indicate consistent or aggressive formal mental health treatment[.]" (Tr. at 25.) Assuming *arguendo* that plaintiff's treatment of medication and talk therapy was somehow insufficiently aggressive[8]—and it is not clear exactly how plaintiff's treatment could have been more aggressive—the Ninth Circuit has

////

---

[7] Here, plaintiff's allegations of mental impairment were consistent with and supported by the diagnoses and observations of professionals trained in the field of psychopathology, specifically the opinions of Psychiatrist Meaghan Connors, Psychologist Robert Bilbrey, and Samia Estrada, Psy. D. (Tr. at 555, 563. 574.) As noted above, the parties agree that the ALJ's treatment of those opinions was erroneous.

[8] According to Dr. Connors, plaintiff's treatment included participation in an "intensive outpatient program," and trials of "13 different medications." (Tr. at 554.)

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Finally, the ALJ attempted to support the rejection of plaintiff's testimony by relying on plaintiff's activities of daily living such as the ability "to drive a car, go shopping in stores, and manage her own finances[.]" (Tr. at 23.) However,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison, 759 F.3d at 1016 (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

Accordingly, the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony. Plaintiff, therefore, is also not entitled to summary judgment on this claim.

### III. Lay Witness Testimony

Plaintiff also argues that the ALJ improperly rejected lay witness testimony. (Pl.'s MSJ (ECF No. 16-1) at 19-20.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288. Persons who see the claimant on a daily basis are

9

competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Here, the ALJ acknowledged the lay witness statement submitted by plaintiff's mother opining that plaintiff was "limited in her functioning due to physical and mental limitations." (Tr. at 27.) The ALJ rejected that statement, in part, because plaintiff's mother did not have "any formal medical background or training," and "as [plaintiff's] mother, her statement cannot be viewed as coming from an entirely, objective third party." (Id.) This reasoning is obviously erroneous. Lay witness testimony is by definition testimony not provided by trained medical professional. See Gonzales v. Berryhill, No. 2:15-cv-1771 DB, 2017 WL 1079913, at *9 (E.D. Cal. Mar. 21, 2017). Nonetheless, such testimony, even when provided by a claimant's mother, "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." Regennitter, 166 F.3d at 1298; see also Smolen, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value . . . such lay witnesses will often be family members.").

The only other reason provided by the ALJ for rejecting the lay witness statement was the assertion that it was "not supported by or consistent with the record as a whole, including objective signs and findings." (Tr. at 27.) Such an assertion is vague, conclusory and cannot be said to be a specific reason germane to the witness. Moreover, it is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. See Smolen, 80 F.3d at 1289. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

For the reasons stated above, the ALJ failed to offer any germane reason for rejecting the lay witness testimony. Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ's treatment of the lay witness testimony constituted error.

### IV. Step Five Finding

Plaintiff's final claim is that the ALJ's finding as step five of the sequential evaluation was not supported by substantial evidence. (Pl.'s MSJ (ECF No. 16-1) at 21-23.) At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Here, the ALJ relied on the testimony of a VE. (Tr. at 30.)

While an ALJ may pose a range of hypothetical questions to a vocational expert ("VE") based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, because the ALJ erroneously rejected multiple medical opinions, plaintiff's testimony, and the lay witness testimony the ALJ's hypothetical question to the VE did not account for the limitations established by that evidence. (Tr. at 70-73.)

Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ committed an error at step five of the sequential evaluation.

////

////

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record has been fully developed and includes opinion evidence from multiple doctors, plaintiff's testimony, the testimony of a lay witness, and the testimony of a VE. As articulated above, the ALJ repeatedly failed to provide legally sufficient reasons for rejecting evidence. If the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Moreover, the record as a whole does not create any doubt as to plaintiff's disability. In this regard, the VE testified at the November 8, 2019 hearing that a person having the impairments established by the evidence the ALJ erroneously rejected would be unable to perform any competitive work. (Tr. at 73-75.)

////

////

12

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;
2. Defendant's cross-motion for summary judgment (ECF No. 18) is denied;
3. The Commissioner's decision is reversed;
4. This matter is remanded for further the immediate award of benefits; and
5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 2, 2022

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\sisneros1470.ord